NIEMEYER, Circuit Judge,
concurring in part and dissenting in part and concurring in the judgment:
I am pleased to concur in the opinion ably presented by Judge King, with the single exception of Part IV.B and that portion of Part VIII that relies on Part IV.B.
The bills of lading in this case state that freight is payable at “as per charter party.” They also provide on the front, “for conditions of carriage see overleaf.” On the overleaf, each bill of lading provides in the first paragraph: “All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated.” It is true, as Judge King points out, that when referring to the charter party on the front, the bills of lading provide no date. While the omission might be material when multiple charter parties could be involved, in this case, the bills of lading are all dated May 2000 and each refers explicitly to transportation on the vessel “ANANGEL FIDELITY.” Because there was only one charter party for the ANANGEL FIDELITY — that dated April 28, 2000 between Hawkspere and ICTS — the particular charter party that is incorporated has not been cast in doubt by the omission of the date. I would add that the bills of lading used by the parties in this case were form bills of lading that were designated for use with charter parties. For all of these reasons, I would conclude, contrary to what the majority concludes in Part IV.B, that the bills of lading in this case effectively incorporated the terms and conditions of the charter party between Hawkspere and ICTS.
The charter party so incorporated provides that Hawkspere “shall have a lien on the cargo for freight.” But it also includes a provision that it “shall be governed by and construed in accordance with English Law.” Although English law recognizes maritime liens in cargo for freight payments, it makes no provision for an in rem proceeding initiated by an arrest of the cargo.
Even though the charter party in this case is governed by English law and I would hold that the charter party’s terms are incorporated into the applicable bills of lading, it is not totally clear that English *241 law would also govern the other terms of the bills of lading, apart from those incorporated by the charter party, because the English-law proviso is applicable only to the terms of the charter party. While this might at first be thought to be a fine distinction, such a distinction is fortified by the inclusion in the charter party of a provision that expressly applies American law to some extent. The charter party states:
Voywar Clause 1950, New Both-to-Blame collision Clause, P & I Bunkering clause, USA Paramount and New Jason Clause to be incorporated in the [charter party] and to be inserted in all Bills of Lading issued hereunder.
Quite apart from the need for an explanation about the substance of each clause referred to in shorthand, there is also the grammatical question of whether “USA Paramount” is a clause different and distinct from “New Jason Clause” or whether “USA Paramount” modifies “New Jason Clause.” Regardless of the answer to that question, American law clearly governs some aspect of the charter party and bills of lading. In the face of this ambiguity in the charter party, I would find it appropriate to resolve the ambiguity, as did the majority in Part IV.C, by the application of Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and I would reach the same result.
In addition to that analysis, to enforce the lien against the cargo, I would apply American procedural law, even if English law were to apply substantively. While English law recognizes the enforcement of maritime hens in cargo for the payment of freight, it does not provide the procedural mechanism for the arrest of the cargo and the entry of in rem judgment against the cargo. Thus, if this concededly legal maritime hen were being enforced in England, an in rem judgment would not be available. But because the action was commenced in the United States, the procedure of the forum should be applied in enforcing the hen. American procedure specifically provides — in the Supplemental Rules for Certain Admiralty and Maritime Claims — for the enforcement of maritime hens through in rem actions. See Fed. R.Civ.P. Supp. R. C(l)(a). In sum, as an alternative, I do not believe that the procedural devices employed under American law to enforce maritime hens would be inconsistent with the substantive provisions of Enghsh law that recognize the hen but leave enforcement to a different process.
Even with these two alternative approaches for enforcement of the district court’s in rem judgment, the district court in this case also entered an in personam judgment against the defendants for the unpaid freight, and that judgment does not depend on the district court’s in rem jurisdiction. An in personam judgment based on the summary judgment procedure is not asserted by any party to violate En-ghsh law, substantive or procedural. Accordingly, it would be enforceable for that reason alone.
At bottom, I agree with the majority and would affirm the judgment of the district court, reaching that position through a different course of analysis.